**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| BONITA A. PLANK,           § | |
|     PLAINTIFF,     § | |
| § | |
| VS.           § | CIVIL ACTION NO. 4:04-CV-172-Y |
| § | |
| JO ANNE B. BARNHART,       § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT.   § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Bonita A. Plank brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Plank applied for SSI benefits on February 20, 2002 (her protective filing date) and disability insurance benefits on March 13, 2002, alleging she has been disabled since December 29, 2000. (Tr. 209, 211, 214). Plank met the requirements for disability insured status through March 31, 2002. (Tr. 212).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 1**

After the Social Security Administration denied her applications for benefits initially and on reconsideration, Plank requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on July 9, 2003 in Fort Worth, Texas. (Tr. 233). Plank was represented by counsel. On September 22, 2003, the ALJ issued an unfavorable decision finding Plank was capable of performing a modified range of light work activity and was therefore not disabled or entitled to disability insurance and SSI benefits. (Tr. 14-22). The Appeals Council denied Plank's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or

combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

Whether new and material evidence was submitted to the Appeals Council that renders the ALJ's mental residual functional capacity assessment unsupported by substantial evidence.

D.   ADMINISTRATIVE RECORD

1.   Treatment History[1]

Plank has a history of chronic depression and anxiety. She first sought assistance from Tarrant County's Mental Health and Mental Retardation services (MHMR) in 1998, and was diagnosed with major depression. Medication was prescribed that appeared to stabilize her mood until an exacerbation of her symptoms in 1999. She remained off work for a year. (Tr. 59, 104-40).

Plank started a new job in March 2000 as a court clerk, and continued to follow a medication regimen of Prozac and Buspar. (Tr. 99). Plank quit her job after nine months of service, asserting that panic attacks and poor concentration prevented her from working. (Tr. 58). In January 2001, Plank sought treatment from psychiatrist Geetha Reddy, M.D., at MHMR and reported that Prozac was no longer effective. (Tr. 88). Plank complained of increased irritability and rages, as well as

---

[1] Plank challenges the Commissioner's assessment of her mental impairments, not her physical capabilities. Additionally, Plank does not challenge the accuracy of the evidence as recounted in the ALJ's written decision, but instead requests a remand for further administrative review of new evidence submitted after the ALJ rendered his decision. Accordingly, the summary of her treatment history will be similarly limited and drawn largely from the ALJ's decision and Plank's presentation of the facts in her brief.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 4**

more anxiety and panic symptoms. Reddy diagnosed bipolar disorder and prescribed Buspar and Lithium as a mood stabilizer. Reddy directed Plank to taper her use of Prozac. (Tr. 89). Although the Lithium was effective, Plank complained that it also caused fluid retention and weight gain. Her Lithium dosage was reduced. (Tr. 78-79). After a variety of adjustments to her medications were made with limited success, Plank stopped seeking treatment from MHMR after May 2001 because she thought they were using her as a "guinea pig." (Tr. 246).

Plank did not receive further psychiatric treatment until January 2, 2002 when she sought emergency assistance from the Acute Behaviorial Health Clinic at John Peter Smith Hospital for increasing panic attacks, depression, and suicidal thoughts. (Tr. 61). Plank was also hospitalized overnight in February 2002 for depression, panic attacks, and anxiety, but was released at her request because the unit she was staying in was aggravating her panic attacks. (Tr. 174). Plank was placed in the Behaviorial Clinic's outpatient program with a diagnosis of major depression disorder and a secondary diagnosis of panic disorder. Her routine follow-up visits during the remainder of 2002 reflect fluctuating mildly to moderately severe symptoms of depression and anxiety. (Tr. 16-17, 143-73).

   2.   Administrative Hearing

Plank was born August 12, 1970 and graduated high school. (Tr. 235-36). She also completed a medical assistant training program. She had work experience as a medical assistant, data entry clerk, and court clerk. (Tr. 236-38). Plank testified that her medications included Xanax, Wellbutrin, Neurontin, Ultram (for pain), Scalaxin (as a muscle relaxer), Zocor (for her high cholesterol), and Maxide (to treat fluid retention). (Tr. 239-40).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 5**

Plank testified that her mother did most of the housework. Plank also relied on her mother for transportation because driving usually precipitated a panic attack. (Tr. 241). She accompanied her mother to the grocery store, but they had to shop for only short periods of time because being around others made Plank nervous. (Tr. 241).

Plank's mother, Bess Walsh, testified that Plank and her two children lived with her. She testified that Plank had panic attacks at least twenty times a month, and each attack could last as long as one hour. (Tr. 254).

Vocational expert Carol Bennett testified that Plank's previous work as a court clerk and data entry clerk was semiskilled to skilled, sedentary work. Work as a medical assistant was considered skilled work requiring light exertion. (Tr. 264). The ALJ asked Bennett to consider an individual

> capable of work that's limited to simple one- or two-step instructions. Superficial interaction with co-workers, and no interaction with the public. And let's say limited to light work. With no constant repetition of the same motion [with the hands].

(Tr. 264). Bennett testified that a worker with these restrictions could perform the job of machine tender or routing clerk. (Tr. 265).

3.  ALJ Decision

The ALJ found that Plank had not engaged in substantial gainful activity since December 29, 2000 and had a severe combination of impairments that included moderate major depression, anxiety, panic disorder, chronic low back pain, obesity, and hyperlipidemia. (Tr. 21). However, the ALJ found that Plank had no impairment or combination of impairments meeting or equaling the severity of a listed impairment. (Tr. 21). The ALJ found that Plank retained the residual functional capacity for light work that did not require constant repetition of the same motion with her hands

and and work that was limited to jobs at the lower end of detailed instruction with only superficial contact with coworkers and no public contact. (Tr. 21). Based on the vocational expert's testimony, the ALJ found that Plank was capable of performing other work existing in significant numbers in the national economy, and accordingly, was not disabled. (Tr. 21-22).

    4.    Appeals Council Evidence

On September 22, 2003 (the same day that the ALJ issued his decision), Plank's treating psychiatrist, James Witschy, M.D., completed a medical evaluation interrogatory assessing Plank's mental condition. Plank submitted the assessment to the Appeals Council for consideration in support of her request for review. (Tr. 198).

Witschy reported that Plank's mental impairments consisted of bipolar disorder and a panic disorder without agoraphobia. (Tr. 198). He further found that Plank was moderately restricted in her activities of daily living. She was considered markedly impaired in her social functioning and ability to understand, remember and carry out simple instructions; and extremely impaired in her ability to respond appropriately to supervisors, coworkers or work situations. In addition, Witschy opined that Plank was extremely limited in dealing with changes in a routine work setting. (Tr. 198). Witschy opined that Plank had constant deficiencies in concentration, persistence or pace on a constant basis, with constant episodes of deterioration and decompensation in work or work-like settings. (Tr. 199).

Witschy first saw Plank on June 23, 2003, and continued to treat her on a monthly basis. He opined that Plank was not capable of working on a full time basis and opined that this disability had begun prior to the date he began treating Plank. He estimated that Plank's mental impairment could

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

be expected to last three to six months if treatment proved successful. (Tr. 199).

D.   DISCUSSION

Plank asserts that new and material evidence submitted to the Appeals Council renders the ALJ's mental residual functional capacity (RFC) assessment unsupported by substantial evidence. Plank accurately observes that Witschy's answers on the detailed medical evaluation interrogatory form reflect more severe impairments in Plank's mental functioning than the ALJ found without the benefit of Witschy's opinion.

Plank agrees that the ALJ cannot be faulted for failing to consider a treating source opinion that was not submitted until after the ALJ rendered his decision. However, the regulations provide a claimant with the opportunity to forward new and material evidence to the Appeals Council for consideration in deciding whether to grant a request for review of an ALJ's decision:

> (b) In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. In reviewing decisions other than those based on an application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470(b). In accordance with the regulations, the Appeals Council stated that Witschy's report had been admitted into evidence and considered, but ultimately declined to review the ALJ's decision. The Fifth Circuit has recently recognized that new evidence submitted to the Appeals Council becomes part of the administrative record to be considered by the court in its substantial evidence review. *Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

Witschy's opinion is both new and material. The report was submitted after the ALJ issued a decision and it relates to Plank's ability to perform specific work-related functions during the time period under consideration by the ALJ.[2] It contradicts the RFC assessment made by the ALJ and the findings of the non-examining state agency medical consultants, yet the Appeals Council stated in conclusory fashion that the report presented no basis for disturbing the ALJ's decision.

Medical opinions, diagnoses, and evidence of a treating physician who is familiar with the claimant's impairments, treatments and responses, are generally given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The Commissioner assigns controlling weight to the opinion of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be wholly rejected. Such opinions are still entitled to deference and must be weighed using the factors outlined in the regulations. These factors include the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-2p, 96-5p. In many cases, the opinion may be entitled to the greatest weight

---

[2] The Commissioner correctly notes that Plank's insured status for purposes of Title II disability insurance benefits expired in March 2002; however, entitlement to SSI benefits has no similar restriction.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p.

Plank requests that this matter be remanded so that the Commissioner may weigh the new evidence in accordance with the regulations and Fifth Circuit authority. The Hearings, Appeals and Litigation Law Manual ("HALLEX") provides that the Appeals Council will specifically address additional evidence or legal arguments submitted to it in connection with a request for review. *See* HEARINGS, APPEALS AND LITIGATION LAW MANUAL ("HALLEX"), ch. I-3-501 (June 1994). The Appeals Council has temporarily suspended this requirement,[3] but in the present circumstances, the lack of a more thorough discussion at the Appeals Council level hinders judicial review. Without it, there is no confirmation that the evidence was fairly weighed in accordance with the regulations, and there are no reasons expressed for not assigning controlling weight to a treating source opinion. *See* 20 C.F.R. § 416.927(d)(2) (stating that good reasons will be given for weight assigned to a treating source opinion).

The Commissioner presents a number of reasons in her brief that support discounting the opinions Witschy offered; however, the court cannot undertake *de novo* review of the evidence or divine the reasons that might support an administrative decision to assign less or no weight to a treating source opinion when the regulations and the Fifth Circuit require that those reasons first be expressed at the administrative level. Under the circumstances, the Commissioner's decision constitutes legal error and is unsupported by substantial evidence because it is contradicted by a

---

[3] *See* HALLEX, ch. I-3-5-90. Chapter I-3-5-90 contains a 1995 memorandum that suspends the detailed discussion requirement; however, there is no indication that this memorandum has been rescinded.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

medical source opinion that is generally entitled to great weight. Reversing the decision and remanding this matter for further administrative consideration of the evidence is appropriate.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 28, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 11**

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 28, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED NOVEMBER 4, 2005.

/s/ Charles Bleil

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE